# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| JANA DeWITT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 12-2605-SAC |
| | ) | |
| SOUTHWESTERN BELL TELEPHONE COMPANY, | ) ) ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM AND ORDER**

This matter comes before the court upon Plaintiff's Motion to Compel and for Leave to Re-Open Discovery and Take Additional Depositions at Defendant's Expense (ECF No. 57). For the reasons explained below, plaintiff's motion is granted in part and denied in part.

**I.     Background**

Plaintiff Jana DeWitt alleges her former employer, Defendant Southwestern Bell Telephone Company, unlawfully discriminated against her in violation of the Americans with Disabilities Act 42 U.S.C. § 12111, *et seq.* and the Kansas Act Against Discrimination, K.S.A. 44-1001, *et seq.* She also asserts a claim for retaliation under the Family Medical Leave Act, 29 U.S.C. § 2601, *et seq.* Southwestern Bell asserts it terminated Ms. DeWitt for cause. It alleges Ms. DeWitt violated company policy by adding services to a customer account without the customer's consent. Southwestern Bell also alleges Ms. DeWitt intentionally disconnected multiple customer calls. Ms. DeWitt suffers from diabetes. She contends that at the time of the disconnected calls, she was experiencing episodes of low blood sugar and had become confused.

This discovery dispute involves various issues, some of which the parties resolved while they were briefing this motion. Ms. DeWitt still seeks an order compelling a response to a

document production request. Because discovery is now closed, Ms. DeWitt also seeks leave of the court to re-depose certain Southwestern Bell employees and to depose additional employees, including in-house counsel. She also seeks an order compelling Southwestern Bell to produce a deposition transcript of Henry Rivera, Ms. DeWitt's former supervisor, for a deposition taken in a case brought by Mr. Rivera against Southwestern Bell. She seeks leave of the court to serve a request for production of certain documents that reflect correspondence with in-house counsel. The court addresses each of these topics below.

II. **Discussion**

A. **The 30(b)(6) Deposition**

Ms. DeWitt's Fed. R. Civ. P. 30(b)(6) deposition notice contained seven discrete topics. The first five topics are directed at the role Southwestern Bell's human resources personnel played in events leading up to Ms. DeWitt's termination. Topics 6 and 7 cover information about Ms. DeWitt's compensation package and potential future earnings. According to Southwestern Bell, the parties agreed in advance of the deposition that the information sought in Topics 6 and 7 would be provided in a manner less burdensome than through a deposition. In her reply brief, Ms. DeWitt states that Southwestern Bell has provided the information requested in Topic 7, and she believes the parties will be able to agree to stipulations regarding both Topic 6 and 7.[1] For these reasons, it appears this issue is now moot.

B. **Southwestern Bell's Objections to the Second Requests for Production**

Ms. DeWitt originally moved to compel responses to all nine of the requests contained in her Second Request for Production. Since that time, Southwestern Bell has supplemented its production and withdrawn certain objections. In her reply brief, Ms. DeWitt now states she

---

[1] Pl.'s Reply to Def.'s Resp. to Pl.'s Mot. to Compel and for Leave to Re-Open Discovery and Take Additional Depositions at Def.'s Expense and Suggestions in Supp. at 3, ECF No. 62.

withdraws the motion as it pertains to Requests Nos. 1-8.[2] That leaves only Request No. 9 at issue. Southwestern Bell argues that the court should deny Ms. DeWitt's motion as it pertains to the Second Requests for Production because Ms. DeWitt's counsel did not adequately confer with opposing counsel about the requests for production before filing this motion. According to Southwestern Bell, it believed that the parties had resolved issues pertaining to Ms. DeWitt's Second Requests for Production.

Fed. R. Civ. P. 37(a)(1) and D. Kan. Rule 37.2 require a moving party, in good faith, to confer with opposing counsel before filing a motion to resolve any discovery disputes. The duty to confer generally requires counsel to "converse, confer, compare views, consult, and deliberate, or in good faith attempt to do so."[3] "The cooperation process should involve information sharing and dialogue in an attempt to resolve discovery disputes without the necessity of the Court ruling on each issue in dispute."[4]

The correspondence attached to the parties' briefs does not make clear that Ms. DeWitt continued to assert that Southwestern Bell's responses and amended responses were deficient. Ms. DeWitt's reply brief notes that respective counsel for the parties also communicated by phone, but her statements in that regard are unspecific—stating that the parties discussed "numerous issues" regarding Southwestern Bell's responses and that defense counsel explained "various things that he was attempting to find and/or clarify regarding Plaintiff's requested documents."[5] While the court does not know what was said between counsel during phone calls,

---

[2] *Id.* at 5.

[3] D. Kan. Rule 37.2.

[4] *High Point SARL v. Sprint Nextel Corp.*, No. 09-2269-CM-DJW, 2012 WL 234024, at *5 (D. Kan. Jan. 25, 2012).

[5] Pl.'s Reply to Def.'s Resp. to Pl.'s Mot. to Compel and for Leave to Re-Open Discovery and Take Additional Depositions at Def.'s Expense and Suggestions in Supp. at 3, ECF No. 62.

the written correspondence does not reflect any ongoing, meaningful attempt to resolve the disputes regarding Southwestern Bell's responses and amended responses to the discovery requests. However, in an effort not to delay this case any further, the court will rule on Ms. DeWitt's request that the court compel as it relates to Request No. 9.

Request No. 9 seeks, "All documents evidencing any attempt made by Defendant to preserve screen shots of Plaintiff's customer calls."[6] Because Southwestern Bell contends it terminated Ms. DeWitt's employment for events that occurred during customer calls, this request seeks information that appears facially relevant. Southwestern Bell originally objected to the request for "all" documents, arguing that the term was overbroad and unduly burdensome because it is impossible to represent that every bit of information falling within a particular description has been included.[7] In response to the motion to compel, however, Southwestern Bell states that it withdraws objections to the use of the term "all."[8] Southwestern Bell also initially objected to the term "screen shots," arguing that the term was not reasonably particular.[9] The court construes this as a vagueness objection. Again, in response to the motion to compel, Southwestern Bell states that it withdraws its objections pertaining to Request No. 9 (among

---

[6] Def. Southwestern Bell Telephone Company's Am. Objections and Resps. to Pl.'s Second Req. for Produc. of Docs. to Def. at 4, ECF No. 57-8.

[7] Def. Southwestern Bell Telephone Company's Objections and Resps. to Pl.'s Second Req. for Produc. of Docs. to Def. at 6, ECF No. 57-6.

[8] Def. Southwestern Bell Telephone Company's Resp. to Pl.'s Mot. to Compel and for Leave to Re-Open Discovery and Take Additional Deps. at Def.'s Expense at 6-7, ECF No. 62.

[9] Def. Southwestern Bell Telephone Company's Objections and Resps. to Pl.'s Second Req. for Produc. of Docs. to Def. at 6, ECF No. 57-6.

4

other requests) based on the ground that documents were not described with sufficient particularity.[10]

It appears issues regarding production of documents in response to Request No. 9 should be moot, as Southwestern Bell appears to have withdrawn all of its objections. Nevertheless, Ms. DeWitt's reply brief states that she still seeks an order compelling a response to this request because Southwestern Bell's most recent amended response "has not changed."[11] To the extent Southwestern Bell continues to object to Request No. 9, those objections are overruled.[12] To the extent any responsive documents exist, Southwestern Bell shall produce them within fourteen (14) days from the date of this order.

### C. Additional Depositions

The court previously ordered that all discovery was to have been served or commenced in time to be completed by October 4, 2013.[13] The court subsequently extended the discovery period to October 25, 2013, for the limited purposes of taking the deposition of Henry Rivera, taking the Rule 30(b)(6) deposition of Southwestern Bell, and for Southwestern Bell to serve responses to Ms. DeWitt's second set of requests for production.[14] On October 21, 2013, one day prior to the Rule 30(b)(6) deposition, Southwestern Bell produced "case notes" that identified additional individuals involved in the decision to issue a Last Chance Agreement to Ms. DeWitt

---

[10] Def. Southwestern Bell Telephone Company's Resp. to Pl.'s Mot. to Compel and for Leave to Re-Open Discovery and Take Additional Deps. at Def.'s Expense at 7, ECF No. 62.

[11] Pl.'s Reply to Def.'s Resp. to Pl.'s Mot to Compel and for Leave to Re-Open Disc. and Take Additional Deps. at Def.'s Expense and Suggestions in Supp. at 5, ECF No. 64.

[12] *See Cardenas v. Dorel Juvenile Grp.*, 230 F.R.D. 611, 615 (D. Kan. 2005) (stating that objections initially raised in response to a discovery request but not relied upon in response to a motion to compel will be deemed abandoned).

[13] *See* Order at 1, ECF No. 44.

[14] *See* Written Order Following Oral Orders During Conference Call at 1, ECF No. 52.

in January 2010 and to terminate Ms. DeWitt's employment in March 2012. Those individuals include human resources employees: Diane Bottalla, Char Spring, and Karen Stevenson. The case notes also identify Chris Bourgeacq, in-house counsel for AT&T Services, Inc., of which Southwestern Bell is a subsidiary. According to Ms. DeWitt, Southwestern Bell had not previously identified these individuals in its Rule 26(a)(1) initial disclosures. Ms. DeWitt also states that at various depositions, deponents responded to questions asking for the identity of individuals who reviewed or approved employment decisions concerning Ms. DeWitt by stating that the matter was "sent to HR and legal" or "whoever was [Southwestern Bell's] employee relations manager."[15]

The case notes also revealed that in January 2010, Southwestern Bell had prepared a separation proposal for Ms. DeWitt. According to Ms. DeWitt, interrogatory answers and witness testimony had only mentioned the March 2010 separation proposal. Southwestern Bell's Rule 30(b)(6) corporate representative was the only deponent who Ms. DeWitt had an opportunity to question about the newly produced case notes—including the January 2010 separation proposal. At depositions taken prior to the production of the case files, Ms. DeWitt was unable to inquire about the January 2010 separation proposal because she did not know it existed.

Ms. DeWitt seeks to reopen the depositions of Beth Kloxin, the attendance and center support manager; Tom Heumann, Ms. DeWitt's immediate supervisor; and Kimberly Baskett-McEnany, who supervised the person supervising Mr. Heumann. She also seeks to take the depositions of Dina Bottala, Char Spring, and Chris Bourgeacq—the individuals identified in the case notes. She also asks for the court to require Southwestern Bell to pay for costs associated

---

[15] Pl.'s Mot. to Compel and for Leave to Re-Open Disc. and Take Additional Deps. at Def.'s Expense and Suggestions in Supp. at 7, ECF No. 57.

with the reopening of the videotaped depositions, including Ms. DeWitt's attorney fees incurred in taking the depositions, including time spent preparing for the depositions and time spent traveling to the depositions.

While Southwestern Bell objects to the deposition of Mr. Bourgeacq, in-house counsel, it has stipulated to the depositions of Ms. Bottala and Ms. Spring. It has also agreed to reopen the depositions of Ms. Kloxin, Mr. Heumann, and Ms. Baskett-McEnany. Southwestern Bell has agreed to pay all duplicative fees associated with reopening depositions—for example, appearance fees for the court reporter and videographer. But Southwestern Bell does not agree it should be required to pay any of Ms. DeWitt's attorney fees for deposing or re-deposing these individuals. It argues Ms. DeWitt would incur these costs regardless of when it had produced the case notes.

Southwestern Bell's proposals to Ms. DeWitt prior to the filing of this motion were reasonable. Southwestern Bell's belated production of the case notes prejudiced Ms. DeWitt in that she was not able to examine certain deponents about the information contained in the case notes, namely the January 2010 separation proposal. Therefore, Southwestern Bell should bear the costs associated with reopening the depositions of Ms. Kloxin, Mr. Heumann, and Ms. Baskett-McEnany—including appearance fees for court reporters and videographers.

But the court will not require Southwestern Bell to bear Ms. DeWitt's attorney fees. There is no evidence of misconduct, bad faith, or negligence on the part of Southwestern Bell in responding to discovery requests. The deposition excerpts cited by Ms. DeWitt fall far short of suggesting these witnesses tried to deceive counsel regarding the January 2010 proposal. Moreover, Ms. DeWitt's counsel would have been required to prepare questions regardless of when Southwestern Bell produced the case notes.

Ms. Kloxin, Mr. Heumann, and Ms. Baskett-McEnany should be deposed in defense counsel's Kansas City office in order to minimize travel costs to Ms. DeWitt's counsel. Questions should be limited to the January separation proposal, whether these individuals provided any of the information in the January proposal, whether they took steps to confirm the accuracy of the information in the January proposal, whether they thought Ms. DeWitt should be terminated in January 2010 pursuant to the recommendation in the January proposal, why these individuals did not raise the January 2010 proposal during their original depositions and any related questions that spring from the newly produced case notes.[16] Each deposition shall not exceed two hours, excluding breaks.

Ms. Dewitt, however, shall bear the cost associated with deposing *new* witnesses, including Ms. Bottala and Ms. Spring. (The court addresses Mr. Bourgeacq's proposed deposition in the next section.) Fees and expenses arising from these depositions would have been incurred even if Southwestern Bell had produced the case notes at an earlier date. These depositions shall take place at a mutually agreeable time, date, and location. Each of these depositions shall be limited to four hours, excluding breaks.[17]

### D. Deposition of In-House Counsel

Mr. Bourgeacq is in-house counsel at AT&T Services, Inc., of which Southwestern Bell is a subsidiary. Ms. DeWitt's motion states that many of the managers and all of the HR and legal department employees involved in the case are AT&T employees. According to Ms. DeWitt, the case notes revealed that Mr. Bourgeacq was involved in some manner in reviewing or approving the January 2010 "Last Chance Agreement" and the March 2010 termination.

---

[16] *See id.* at 11 (proposing subject limitations).

[17] *See* Scheduling Order at 6, ECF No. 15 (imposing time limits on depositions).

Additionally, Mr. DeWitt argues that Southwestern Bell has put Mr. Bourgeacq's legal advice at issue in this case by asserting two affirmative defenses relating to its reliance on legal advice. She also points to deposition testimony referencing contact with Mr. Bourgeacq and the legal department in conjunction with decisions about Ms. DeWitt's employment. Ms. DeWitt contends she should be allowed to depose Mr. Bourgeacq because Southwestern Bell has put his advice at issue and waived the attorney-client privilege and because Mr. Bourgeacq has relevant, discoverable information.

i. Waiver

The court first addresses the issue of waiver of the attorney-client privilege. Ms. DeWitt argues that Southwestern Bell has waived the attorney-client privilege through its pleading and by its conduct in this litigation. Ms. DeWitt asserts both federal and state law claims. The Tenth Circuit has directed that in this situation, a court is to consider both bodies of law.[18] It should look to federal law for the federal claims and state law for the state claims.[19]

Generally, courts follow one of three approaches when determining whether a party has waived the attorney-client privilege by placing protected information "at issue."[20] In *Frontier Refining, Inc. v. Forman-Rupp Co.*, the Tenth Circuit summarized the approaches:

> The first of these general approaches is the "automatic waiver" rule, which provides that a litigant automatically waives the privilege upon assertion of a claim, counterclaim, or affirmative defense that raises as an issue a matter to which otherwise privileged material is relevant. The second set of generalized approaches provides that the privilege is waived only when the material to be discovered is both relevant to the issues raised in the case and either vital or necessary to the opposing party's defense of

---

[18] *See Sprauge v. Thorn Ams.*, 129 F.3d 1355, 1369 (10th Cir. 1997).

[19] *See id.*

[20] *See Frontier Refining, Inc. v. Forman-Rupp Co.*, 136 F.3d 695, 699 (10th Cir. 1998).

9

the case. Finally, several courts have recently concluded that a litigant waives the attorney-client privilege if, and only if, the litigant directly puts the attorney's advice at issue in the litigation.[21]

Although the Tenth Circuit has not adopted a definitive test for determining when a party has impliedly waived the privilege by placing information at issue, this district has held that the Tenth Circuit would likely adopt the intermediate approach articulated in the Eastern District of Washington opinion *Hearn v. Rhay*.[22] Under the *Hearn* test, waiver occurs when:

> (1) assertion of the privilege was the result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to its defense.[23]

The court will also apply the *Hearn* test with regard to the state law claim. This district has previously found the Kansas Supreme Court would likely reject the automatic-waiver rule.[24] The court need not choose between the remaining two approaches because Ms. DeWitt's assertion of waiver fails under the *Hearn* test, the more liberal of the two approaches.[25]

Ms. DeWitt argues Southwestern Bell has put legal advice at issue through its employees' deposition testimony. Ms. DeWitt references deposition testimony in which deponents stated

---

[21] *Id.* at 699.

[22] *See New Jersey v. Sprint Corp.*, 258 F.R.D. 421, 430 (D. Kan. 2009) (relying on *Hern v. Rhay*, 68 F.R.D. 574 (E.D. Wash. 1975)); *Williams v. Sprint/United Mgmt. Co.*, 464 F. Supp. 2d 1100, 1114 (D. Kan. 2006).

[23] *New Jersey*, 258 F.R.D. at 430 (citing *Hearn*, 68 F.R.D. at 581).

[24] *See Flint Hills Scientific, LLC v. Davidchack*, No. 00-2234-JAR, 2002 WL 975881, at *4-*5 (D. Kan. Mar. 21, 2002); Simmons *Foods, Inc. v. Willis*, 191 F.R.D. 625, 634 (D. Kan. 2000).

[25] *See Frontier Refining*, 136 F.R.D. at 700-01 (considering what approach the Wyoming Supreme Court would take, rejecting the automatic-waiver rule, and concluding "this court need not choose between the two general approaches because [defendant] has failed to demonstrate its entitlement to the privileged materials under the more liberal of the two approaches to waiver[, the *Hearn* test]").

they took certain actions after they "cleared it with legal" or "got approval from legal."[26] She does not identify these deponents or provide the court with more context for these statements. Ms. DeWitt argues that it is unfair to allow Southwestern Bell to disclose selected communications without giving Ms. DeWitt the opportunity to test whether "clearance" or "approval" was informed, in good faith, and reasonable. Typically, a deponent does not waive the attorney-client privilege when, in response to questions, the deponent references its interactions with the legal department.[27] The answers deponents provided were presumably elicited by Ms. DeWitt's counsel in response to questions. These excerpts of testimony from unidentified deponents lack any context supporting a conclusion that Southwestern Bell made an affirmative act that put at issue reliance on counsel's advice.

Ms. DeWitt also argues that through affirmative defenses, Southwestern Bell has put advice of counsel at issue. She points to the following defenses:

> 5. Defendant SWBT states that all actions by it were taken in good faith and Defendant SWBT reasonably believed it had complied with the requirements of the law and any applicable regulations. . . .
>
> 16. Plaintiff's compliant is barred because Plaintiff is not disabled, is not a qualified individual with a disability, did not engage in the interactive process in good faith and further accommodating her alleged circumstances would pose an undue hardship.[28]

---

[26] Pl.'s Mot. to Compel and for Leave to Re-Open Disc. and Take Additional Deps. at Def.'s Expense and Suggestions in Supp. at 14, ECF No. 57

[27] *See generally, Williams*, 464 F. Supp. 2d at 1104-05 (finding in an employment case that the defendant had waived the attorney-client privilege when deponents answered pointed questions by plaintiffs' counsel concerning communications with the legal department).

[28] Pl.'s Mot. to Compel and for Leave to Re-Open Disc. and Take Additional Deps. at Def.'s Expense and Suggestions in Supp. at 14, ECF No. 57 (quoting Def.'s Answer at ¶¶ 5, 16, ECF No. 11).

Ms. DeWitt argues that by pleading these affirmative defenses, Southwestern Bell has waived any attorney-client privilege that would attach to communications with Mr. Bourgeacq in connection with Southwestern Bell's treatment of Ms. DeWitt up to and including the date of her termination. This approach is akin to the automatic waiver rule, whereby a party waives the privilege on a mere assertion of a claim or affirmative defense "that raises as an issue a matter to which otherwise privileged material is relevant."[29] But the automatic waiver rule has been criticized by the circuits and rejected in this district.[30] Moreover, Southwestern Bell states that at trial it "does not intend to offer or rely on evidence of the substance of any legal advice it received concerning the disciplinary actions taken against Plaintiff."[31] Instead, it plans to rely on its policies, anti-discrimination enforcement efforts, and the like.[32] The court finds that Southwestern Bell has not waived the attorney-client privilege through assertion of these affirmative defenses.

### ii. The *Shelton* Test

Even so, depositions of opposing counsel are not prohibited by the Federal Rules of Civil Procedure. This district, however, has recognized the potential for abuse in deposing an opponent's attorney by inviting "delay, disruption of the case, harassment, and unnecessary distractions into collateral matters."[33] As a result, this district generally follows the criteria set

---

[29] *Williams*, 464 F. Supp. 2d at 1103.

[30] *Williams v. Sprint/United Mgmt. Co.*, 238 F.R.D. 633, 647 (D. Kan. 2006).

[31] Def. Southwestern Bell Telephone Company's Resp. to Pl.'s Mot. to Compel and for Leave to Re-Open Discovery and Take Additional Deps. at Def.'s Expense at 24, ECF No. 62.

[32] *Id.*

[33] *Mike v. Dymon, Inc.*, 169 F.R.D. 376, 378 (D. Kan. 1996) (citing *Hay & Forage Indus. v. Ford New Holland, Inc.*, 132 F.R.D. 687, 689 (D. Kan. 1990)).

forth in *Shelton v. American Motors Corp.*,[34] an Eighth Circuit opinion, when determining whether to allow the deposition of opposing counsel.[35]

In *Shelton*, the Eighth Circuit Court of Appeals recognized the increasing practice of taking the deposition of opposing counsel as a negative development and one that should be employed only in limited circumstances.[36] Consequently, *Shelton* set forth limited circumstances in which the court should permit the deposition of opposing counsel.[37] Specifically, the court should limit these depositions to circumstances where the party seeking the deposition has shown that: "(1) no other means exist to obtain the information than to depose opposing counsel . . . ; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case."[38] The party seeking to depose opposing counsel bears the burden of establishing that the three criteria are satisfied.[39] Here, both parties cite the *Shelton* test as the appropriate standard the court should consider when determining whether to allow Ms. Bourgeacq's deposition. Therefore, the court assumes Ms. DeWitt also considers Mr. Bourgeacq opposing counsel for the purpose of considering whether to allow his deposition.

---

[34] 805 F.2d 1323 (8th Cir. 1986).

[35] *See, e.g., Buth v. AAA Allied Grp., Inc.*, No. 12–CV–1223–JWL–DJW, 2013 WL 1308543, at *1 (D. Kan. Mar. 28, 2013) (stating that as a result of potential abuse in deposing opposing counsel, this district generally follows the *Shelton* criteria); *Ed Tobergate Assocs. v. Russell Brands, LLC*, 259 F.R.D. 550, 554–55 (D. Kan. 2009) (stating that "courts in this District have almost universally applied the *Shelton* criteria in deciding whether to allow the deposition of opposing trial counsel"); *Cont'l Coal, Inc. v. Cunningham*, No. 06–2122–KHV, 2008 WL 145245, *2 (D. Kan. Jan. 14, 2008) (applying the *Shelton* criteria to a motion for a protective order prohibiting the depositions of opposing counsel). *See also Boughton v. Cotter Corp.*, 65 F.3d 823, 829-30 (10th Cir. 1995) (applying the *Shelton* criteria).

[36] *Shelton*, 805 F.2d at 1327.

[37] *Id.*

[38] *Id.* (internal citations omitted).

[39] *Ed Tobergte Assocs.*, 259 F.R.D. at 555.

Ms. DeWitt argues she has no other means to test or counter Southwestern Bell's defenses or to determine what role Mr. Bourgeacq or his legal department played in the events that occurred prior to Ms. DeWitt's termination. Beyond this conclusory assertion, Ms. DeWitt fails to explain why she could not obtain information about Mr. Bourgeacq's or the legal department's role from other individuals involved in the employment decisions—to the extent these communications were nonprivileged. It seems Mr. Bourgeacq would not be the exclusive source of this information.

As for Ms. DeWitt's arguments about the affirmative defenses, the court lacks much information about the facts forming the basis for these defenses. Southwestern Bell states it plans to rely on rely its policies and anti-discrimination enforcement efforts. This being the case, it seems unlikely that Mr. Bourgeacq, a general attorney in the labor and human resources department, would be the exclusive source for information relevant to these defenses. Ms. DeWitt has not shown the information she seeks is unavailable from other sources. Additionally, Ms. DeWitt has not addressed the third criterion: that the information is crucial to the preparation of her case. Because she has failed to establish two of the three criteria of the *Shelton* test, the court will not compel the deposition of Mr. Bourgeacq. The court declines to consider the second-listed criterion.

On a related note, Ms. DeWitt bases much of her motion on the belatedly produced case notes. But the affirmative defenses she cites were included in Southwestern Bell's answer, filed on November 6, 2012. She makes no attempt to explain why she waited until after discovery had closed to attempt to discover the basis for those defenses. Additionally, she relies on deponents' references to consulting the legal department for advice regarding Ms. DeWitt's employment. The deposition testimony establishes that Ms. DeWitt had knowledge of the legal department's

14

involvement prior to the production of the case notes. When considering whether to reopen discovery, the court considers, among other things, "whether the moving party was diligent in obtaining discovery within the guidelines established by the court."[40] It appears Ms. DeWitt was not diligent in attempting to take this discovery during the discovery period. For this and all of the reasons stated above, the court denies Ms. DeWitt's request to depose Mr. Bourgeacq.

### E. Written Communications Involving In-House Counsel

Southwestern Bell has redacted portions of the case notes. It argues these portions contain communications protected by the attorney-client privilege. Ms. DeWitt raises issues with the redactions, but she does not specifically move to compel an unredacted version.[41] Instead, Ms. DeWitt requests leave to serve a request for production seeking all communications by or to Mr. Bourgeacq relating to Ms. DeWitt that were created on or before the date of her termination. In support of her requests, Ms. DeWitt advances the same waiver argument already considered and rejected above. For these same reasons, the court also denies Ms. DeWitt's request for leave to serve an additional request for production.

### F. Deposition Transcript of Henry Rivera

On October 1, 2013, Ms. DeWitt deposed Mr. Rivera, a supervisor at Southwestern Bell during the time of Ms. DeWitt's employment. During the deposition, Mr. Rivera testified that he had been previously deposed in his own lawsuit and had provided answers that related to Ms. DeWitt. Ms. DeWitt stated she requested a copy of the deposition transcript from Mr. Rivera's counsel but was told he did not have a copy. She also informally requested a copy from

---

[40] *Smith v. United States*, 834 F.2d 166, 169 (10th Cir. 1987) (identifying six factors the court may consider when determining whether to reopen discovery).

[41] *See* Pl.'s Mot. to Compel and for Leave to Re-Open Disc. and Take Additional Deps. at Def.'s Expense and Suggestions in Supp. at 16-20, ECF No. 57 (omitting this request from the section addressing the redacted copies and omitting this request from her prayer for relief).

15

Southwestern Bell's counsel, but they have declined to voluntarily provide it. She now seeks an order compelling Southwestern Bell to produce the transcript.

Generally, judges in this district have declined to compel responses to informal discovery requests. In denying to compel a response to an informal discovery request, Chief Magistrate Judge James P. O'Hara addressed this issue:

> Informal discovery has its place, and obviously it can be very efficient and useful in some situations. But informal discovery has drawbacks and limitations. Besides Fed. R. Civ. P. 37(a)'s clear language as to when a motion to compel a discovery response may be made, other judges in the District of Kansas have refused to compel a party to respond to informal discovery requests. The Federal Rules of Civil Procedure provide necessary boundaries and requirements for formal discovery. Parties must comply with such requirements in order to resort to the provisions of Fed. R. Civ. P. 37, governing motions to compel. Informal requests for production lie outside the boundaries of the discovery rules.[42]

Magistrate Judge Gerald R. Rushfelt noted some of the safeguards associated with formal discovery: "Formal requests require certificates of conferring and service. . . Formal requests certify representations of counsel under Fed. R. Civ. P. 11(b)."[43] He concluded that "[t]o treat correspondence between counsel as formal requests for production under Rule 34 would create confusion and chaos in discovery."[44]

The undersigned takes the same position. Informal discovery is often more expedient and should be encouraged. However, if opposing counsel refuses to respond to an informal discovery request, the party seeking discovery must follow up with a formal discovery request, served

---

[42] *Continental Cas. Co. v. Miltiservice Corp.*, No. 06-2256-CM, 2008 WL 73345, at *8 (D. Kan. Jan. 7, 2008) (internal quotations omitted) (citing *Alexander v. Certified Master Builders Corp.*, No. 96–2515, 1998 WL 303497, at *2 (D. Kan. June 4, 1998); *Sithon Mar. Co. v. Holiday Mansion*, No. 96–2262-GTV, 1998 WL 182785, at *2 (D. Kan. Apr. 10, 1998)).

[43] *Sithon Mar. Corp.*, 1998 WL 182785, at *2.

[44] *Id.*

within the discovery period, if that party wants the option to seek a court order compelling a response. For these reasons, the court denies Ms. DeWitt's request for an order compelling Southwestern Bell to produce the transcript of Mr. Rivera's deposition in the case he filed against Southwestern Bell.

Accordingly,

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Compel and for Leave to Re-Open Discovery and Take Additional Depositions at Defendant's Expense (ECF No. 57) is granted in part and denied in part as detailed in this order. The additional discovery permitted by this order shall be commenced in time to be completed by **March 31, 2014.** The court will enter a subsequent order resetting the remaining case management deadlines.

**IT IS SO ORDERED.**

Dated this 24th day of February, 2014, at Topeka, Kansas.

s/ K. Gary Sebelius  
K. Gary Sebelius  
U.S. Magistrate Judge